RAYMOND G. HILL AND RUTH HILL, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5540–65, 5546–65, 5547–65. Filed January 16, 1969.

*Roger E. Lageschulte* and *Richard F. Kroetch*, for the petitioners.
*Lee A. Kamp*, for the respondent.

BRUCE, *Judge:* Respondent determined deficiencies in income tax of the petitioners for the years and in the amounts shown below. In the answers to the petitions, respondent claimed increased deficiencies as shown.

---

[1] Proceedings of the following petitioners are consolidated herewith: W. T. Shervey and Harriet Shervey, docket No. 5546–65; and Elmer R. Coats and Donna Coats, docket No. 5547–65.

| Docket No.— | Petitioner | Year | Original deficiency | Increased deficiency |
|---|---|---|---|---|
| 5540-65 | Hill | 1962 | $3,651.35 | $5,560.32 |
| | | 1963 | 3,392.57 | 2,348.30 |
| 5546-65 | Shervey | 1962 | 3,334.12 | 3,407.52 |
| 5547-65 | Coats | 1962 | 5,186.70 | 6,225.71 |
| | | 1963 | 2,488.33 | 1,838.95 |

The cases were consolidated because of common issues involving investments in a small business corporation. The principal issue is whether the petitioners are entitled to deductions as ordinary losses for amounts purportedly paid for stock issued as "Section 1244 stock" by the corporation. If not entitled to such deductions, the further issue involved is whether any deductions are allowable on account of loans made by each of the petitioners to the corporation and the guaranty by two of them of loans made to the corporation by a bank.

FINDINGS OF FACT

The stipulation of facts and the exhibits attached thereto are incorporated by this reference.

The petitioners in each docket number are husband and wife. At the time of filing the petitions all the petitioners were residents of Seattle, Wash. Each couple filed joint Federal income tax returns for the calendar years 1962 and 1963 with the district director of internal revenue at Tacoma, Wash. The husbands will be referred to as the petitioners.

DeVere Corp., hereinafter referred to as DeVere, was a corporation formed under the laws of the State of Washington on April 13, 1962, with a capital structure of 100,000 shares of no-par common stock. The incorporators were Arnie Bergh, Vernon W. Conrad, Daniel O. Corthell, Warren R. Green, and William H. Nightingale, all of Seattle. The corporation was formed for the purpose of operating a trailer court on a motel-type basis during the Century 21 World's Fair held in Seattle in 1962. The trailer court was operated under the name of Stadium Terrace Coach Motel.

DeVere was an electing small business corporation.

The incorporators of DeVere purchased 36,000 shares of its stock for $10,000. At the same time Raymond G. Hill, Elmer R. Coats, W. T. Shervey, Louis B. Miller, and Carl E. Martin, each purchased 3,600 shares of DeVere stock for $1,000 and each loaned $11,000 to the corporation on a note dated April 13, 1962, and payable November 13, 1962. No interest was provided for in such notes.

The directors of DeVere were Corthell, Bergh, Conrad, Green, Nightingale, Hill, and Coats.

DeVere borrowed funds from the National Bank of Commerce of Seattle, hereinafter referred to as the bank, on unsecured promissory notes at 6-percent interest on dates and in amounts as follows:

| Date of note 1962 | Amount | Date note due 1962 |
|---|---|---|
| May 14 | $15, 000 | Sept. 11 |
| May 18 | 2, 000 | Sept. 11 |
| June 4 | 21, 000 | Oct. 3 |
| June 12 | 6, 000 | Sept. 10 |

The foregoing notes were cosigned by Hill and Coats. On September 12, 1962, the outstanding balance on these notes in the amount of $41,100 was renewed in a single 6-percent promissory note payable on demand. This note was also cosigned by Hill and Coats.

Prior to or at the time of incorporation, the incorporators prepared a projected forecast of the receipts and disbursements of the motel for the period April 21 to October 21, 1962. The proposed operation anticipated 300 units available for rental at $18 per day, which with a vacancy average estimated at 15 percent would realize an expected gross income of $826,659. The plan was to lease 100 or more triple-unit 55-foot trailers at a gross rental of $3,600 each for the 6 months' period. The estimated total expense, including trailers, was $559,264.86 plus lease expense for land of $13,369.71, which would yield a profit of $254,024.43 before taxes.

DeVere entered into lease agreements for the use of a number of trailers and commenced operations of the motel. The occupancy proved far short of expectations and the venture resulted in a loss.

The records of DeVere show no rentals after September 18, 1962.

The lease agreements under which DeVere contracted for trailers for use in the motel included clauses granting options to purchase the units for prices stated therein, with the rental paid to be applied on the purchase price. The leases were for a term of 6 months with the right of the lessee to continue in possession on a month-to-month basis.

On October 21, 1962, the directors of DeVere accepted an offer made by Hill and Coats to purchase the company's option on certain trailers for $500.

As of October 21, 1962, the balance sheet of DeVere showed the following assets and liabilities:

| | | |
|---|---|---|
| Cash | $73. 55 | |
| Inventories | 5, 000. 00 | |
| Total assets | | $5, 073. 55 |
| Accounts payable | $9, 251. 99 | |
| Notes payable | [1] 55, 000. 00 | |
| Loan payable | [2] 37, 604. 24 | |
| Total liabilities | | $101, 856. 23 |

[1] The notes were five notes for $11,000 each owing to Hill, Coats, Shervey, Miller, and Martin.
[2] The loan was the amount due the National Bank of Commerce which Hill and Coats had guaranteed.

The minutes of a meeting of the directors of DeVere held December 14, 1962, at which Corthell, Green, Conrad, Hill, and Coats were present, recite:

The financial situation of the company was discussed at length in an effort to determine what might be done to alleviate the present extremely unsatisfactory position. Since the raising of additional cash is an obvious necessity, the only practical, and perhaps possible, course open seemed to be through the means of a further common stock issue. It was pointed out that under Section 1244 of the Internal Revenue Code, losses on the shares of corporate stock can be applied in full against the ordinary income of the shareholder, up to $50,000.00 in any one year on a joint return, if a qualifying plan to issue stock is adopted by the corporation, and if no previous offerings of shares not fully subscribed are outstanding. Consequently, the following Resolutions were unanimously approved and passed by the Board of Directors:

(1) It is hereby resolved that all previous offerings, if any, of shares of stock of DeVere Corporation not fully subscribed are hereby cancelled.

(2) It is hereby resolved that the Directors are authorized to offer for sale 40,000 shares of the common stock of DeVere Corporation under section 1244 of the Internal Revenue Code at a price of $2.50 per share, the said offer to be valid until one year from date, and in no event shall the offer be for a period longer than two years from the date of this plan. The Directors are authorized only to receive money as consideration for the sale of such shares. The total consideration to be received under the plan shall not exceed the sum of $100,000 and, for such shares sold for $2.50 each, $1.00 shall be credited to the Capital Stock account and $1.50 to Paid In Surplus.

A discussion then insued [sic] as to the first year's closing date of the corporation and the following resolution was unanimously approved and passed by the Board of Directors:

It is resolved that the first closing date for the corporation shall be set at November 30, 1962.

On December 21, 1962, Hill acquired 12,604 shares of stock of DeVere for $31,510, Coats acquired 12,604 shares for $31,510, and Shervey acquired 4,400 shares for $11,000. On January 4, 1963, Carl E. and H. Martin acquired 4,400 shares for $11,000.

On or after December 21, 1962, DeVere issued checks for $11,000 each to Hill, Coats, and Shervey in payment of its promissory notes issued April 13, 1962, to these petitioners. DeVere also paid $38,266.24 in principal and interest to satisfy its bank loan from the National Bank of Commerce.

The petitioners disposed of their DeVere stock, both the original shares and the shares acquired in December 1962, on December 28 and 30, 1962, for one-tenth of a cent per share, to B & C Investment Co. B & C Investment Co. was a partnership formed by members of a law firm in Seattle, counsel for the petitioners. On December 28, Hill and Coats each disposed of 7,952 shares of the stock acquired in December. On December 30 they each disposed of 4,652 shares of such stock and also their 3,600 shares of original stock. Shervey disposed of

his 4,400 shares on December 28 and of his 3,600 original shares on January 2, 1963.

DeVere filed an excise tax return with the State Tax Commission on February 14, 1963, for the quarter ended September 30, 1962. This was marked "Final Return."

DeVere filed a U.S. Small Business Corporation Return of Income, Form 1120–S, for the fiscal period April 13, 1962, to November 30, 1962, on February 12, 1963. It reported gross income from rents of trailer lodging in the amount of $38,239.15, deductions of $149,536.75, and loss of $111,297.60. A schedule allocated the loss to the various stockholders in accordance with their original stockholdings, including the amount of $7,419.84 each to Hill, Coats, and Shervey.

DeVere filed a return on Form 1120–S for the fiscal year ended November 30, 1963, on April 19, 1965. It showed no income, expenses, assets, or liabilities.

The petitioners reported gains and losses from their investments and loans to DeVere as follows:

| | Hill | Coats | Shervey |
|---|---|---|---|
| *1962* | | | |
| Net operating loss | ($7,419.84) | ($7,419.84) | ($7,419.84) |
| Ordinary loss—sale of sec. 1244 stock | (19,872.05) | (19,872.05) | (10,992.00) |
| Capital gain on redemption of note | 6,419.84 | 6,419.84 | 6,419.84 |
| *1963* | | | |
| Ordinary loss—sale of sec. 1244 stock | (11,625.35) | (11,625.35) | None |
| Capital loss—sale of regular stock | (996.40) | (996.40) | None |
| | (33,493.80) | (33,493.80) | (11,992.00) |

On their income tax returns for 1963, Hill and Coats reported income from sales of trailers, as follows:

| | | |
|---|---|---|
| Sales | | $43,614 |
| Cost of sales: | | |
|     Inventory 1/1/1963 | $46,038 | |
|     Inventory 12/31/1963 | 6,393 | 39,645 |
| Gross profit | | 3,969 |
| Less interest expense | | 1,142 |
| Net profit | | 2,827 |
| Distribution: | | |
|     Hill | | 1,413 |
|     Coats | | 1,414 |

The stock issued by DeVere in December 1962 did not qualify as "Section 1244 stock."

The petitioners realized no losses upon dispositions of such stock, or of their original stock.

The petitioners did not realize gain upon the purported redemption of DeVere's notes.

Each petitioner realized a nonbusiness bad debt loss of $4,580.16 in 1962 from his loan to DeVere.

Hill and Coats each realized a loss of $19,133.12 as a nonbusiness bad debt from his guaranty of DeVere's notes to the bank.

## OPINION

The petitioners made investments in DeVere, a small business corporation, in April 1962. Each invested $1,000 in stock and loaned $11,000 more on the corporation's note. In addition, Hill and Coats each cosigned the corporation's notes given in borrowing money from the bank. The venture proved unsuccessful and in December 1962 Hill and Coats, who were among the directors of DeVere, met with other directors to consider what might be done. At that time DeVere was insolvent and owed accounts payable in excess of $9,000, owed the bank approximately $38,000 in principal and interest, and had assets of approximately $5,000. It also owed $11,000 to each of five stockholders, including these three petitioners. Hill and Coats were each fully liable for the debt to the bank. If each paid one-half of this it would cost him about $19,000 in addition to any losses resulting from the $1,000 stock investment and the $11,000 loan which DeVere could not repay. Each of the petitioners would be entitled to claim a deduction of some $7,400 as his share of DeVere's net operating loss. Sec. 1374, I.R.C. 1954.[2] The remainder of his loss on the original investment

---

[2] SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS.

(a) GENERAL RULE.—A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section.

(b) ALLOWANCE OF DEDUCTION.—Each person who is a shareholder of an electing small business corporation at any time during a taxable year of the corporation in which it has a net operating loss shall be allowed as a deduction from gross income, for his taxable year in which or with which the taxable year of the corporation ends (or for the final taxable year of a shareholder who dies before the end of the corporation's taxable year), an amount equal to his portion of the corporation's net operating loss (as determined under subsection (c)).

(c) DETERMINATION OF SHAREHOLDER'S PORTION.—

\*   \*   \*   \*   \*   \*   \*

(2) LIMITATION.—A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

(A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and

(B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation).

and loan and the loss of Hill and Coats on the guaranty would be available only as nonbusiness bad debt deductions under section 166 (d) (2), I.R.C. 1954.[3]

In this situation, the directors of DeVere, including Hill and Coats, who were obligated for the largest amounts, took steps to avail the stockholders of the benefits which they believed were afforded under the provisions of section 1244 of the Internal Revenue Code of 1954.[4] The directors canceled all previous stock offerings and authorized a new stock offering pursuant to section 1244. Hill and Coats each acquired 12,604 shares of this stock for $31,510, and received back $11,000 on account of his loan made in April, leaving $20,510 from each with DeVere. The corporation paid the principal and interest owing to the bank, $38,266.24, thus relieving Hill and Coats of further liability on their guaranty. Hill and Coats disposed of this stock a week or so later to B & C Investment Co., a partnership formed by some of their attorneys. Shervey paid $11,000 to DeVere and acquired 4,400

---

[3] SEC. 166. BAD DEBTS.
   (d) NONBUSINESS DEBTS.—
      (1) GENERAL RULE.—In the case of a taxpayer other than a corporation—

    \*        \*        \*        \*        \*        \*        \*

      (B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.
      (2) NONBUSINESS DEBT DEFINED.—For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than—
        (A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer; or
        (B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.
[4] SEC. 1244. LOSSES ON SMALL BUSINESS STOCK.
   (a) GENERAL RULE.—In the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset.

    \*        \*        \*        \*        \*        \*        \*

   (c) SECTION 1244 STOCK DEFINED.—
      (1) IN GENERAL.—For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if—
        (A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan,
        (B) at the time such plan was adopted, such corporation was a small business corporation,
        (C) at the time such plan was adopted, no portion of a prior offering was outstanding,
        (D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities), and
        (E) such corporation, during the period of its 5 most recent taxable years ending before the date the loss on such stock is sustained (or if such corporation has not been in existence for 5 taxable years ending before such date, during the period of its taxable years ending before such date, or if such corporation has not been in existence for one taxable year ending before such date, during the period such corporation has been in existence before such date), derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities \* \* \*

shares and received back $11,000 on account of his loan. He likewise disposed of the 4,400 shares to B & C. All the petitioners disposed of their original stockholdings to B & C.

On their income tax returns for 1962 each of the petitioners claimed deductions for his share of the net operating loss of DeVere for the fiscal period ended November 30, 1962. They also reported capital gain on the redemption of the corporation's notes. See Rev. Rul. 64–162, 1964–1 C.B. (Part 1) 304. The petitioners claimed deductions as ordinary losses on account of the purchase and sale of the DeVere stock they received in December as section 1244 stock. Hill and Coats also claimed capital loss deductions in their 1963 returns on the disposition of their original stock, which they now concede are not allowable.

Respondent disallowed the losses claimed by petitioners as ordinary losses on the DeVere stock they acquired in December 1962. In the deficiency notices respondent allowed such losses as long-term capital losses. In the answers to the petitions, respondent took the position that the losses were not allowable at all.

The petitioners contend that the action taken by the directors of DeVere in authorizing sale of section 1244 stock and the petitioners' subsequent transactions in such stock complied in all respects with the requirements of section 1244 and entitle them to treat the losses thereon as ordinary losses. They say that section 1244 was availed of to achieve the result for which it was enacted by the Congress, namely to save taxes with respect to investments in small business corporations.

The congressional intent is stated in H. Rept. No. 2198, 85th Cong., 1st Sess., 1959–2 C.B. 710, as follows:

This is a bill to aid and encourage small business. It is not, however, an attempt to settle all of the small businesses problems, even in the area of Federal taxation. Instead, it constitutes a step, undertaken within the limits of the present fiscal requirements, to deal with a few of the more important tax problems of small business. The goals of the bill are summarized below.

(1) The bill is designed to increase the volume of outside funds which will be made available for the financing of small business. Encouragement for external financing is provided by the ordinary loss treatment accorded investments in small business which do not prove to be successful. In this manner the risk element in small-business investments will be decreased for all such investments, including the enterprises which ultimately succeed, as well as those which fail.

Respondent does not suggest that the action of the directors and the petitioners failed to comply with the technical requirements of section 1244. We assume for the purpose of this case that the procedures adopted and the transactions carried out by the parties met these requirements in the literal sense. Nevertheless, we hold that section 1244 is not applicable to authorize treatment as ordinary losses of the losses claimed by petitioners upon disposition of the stock they acquired in December 1962.

Section 1244, as explained above, was intended to encourage investments in small business enterprises. The petitioners' payments to DeVere for this stock were not investments. Shervey paid in $11,000 and received it back immediately, purportedly in payment of the earlier loan of that amount. This could not properly be termed an investment. The same applies to $11,000 of the amounts paid in by Hill and by Coats which they received back in the same guise. Of the additional amount of $20,510 paid in by each of them, $19,133.12 went to pay the principal and interest due the bank and thus to relieve them of liability on their guaranty. They were to this extent paying their personal debts, not investing in the business of the corporation. The record does not show the disposition of the small amount left over, but it would not cover the other debts of the corporation.

In *Wesley H. Morgan*, 46 T.C. 878 (1966), the taxpayers were members of a partnership which invested in a small business corporation. The corporation was unsuccessful and the directors voted to liquidate. The partnership purportedly purchased section 1244 stock in an amount sufficient to pay the corporation's debts. The partners claimed ordinary losses from their shares of this stock. This Court, in denying the taxpayers' contention, stated, at page 892:

> However laudable the motives behind this payment, it certainly does not fall within the spirit of section 1244 nor does it accomplish the purpose for which Congress enacted that section. According to the committee report, *supra*, section 1244 was designed to encourage investments in small businesses presumably to permit them to carry on their business, not to provide an ordinary loss deduction for bailing out the corporation's creditors after it had ceased doing business.

The Court said further (p. 893):

> But we will not accept the argument that it was paid for stock which was admittedly worthless at the time of issuance and which would represent an additional interest in a corporation which was insolvent and was already in the process of dissolution. The only reason this would be done would be to create a tax deduction. We cannot agree that this payment resulted in a loss on section 1244 stock, whether or not the stock purportedly issued technically qualified as section 1244 stock; and we so hold. * * *

See also *Bruce* v. *United States*, 279 F. Supp. 686, 689 (S.D. Tex. 1967), and *Edwin C. Hollenbeck*, 50 T.C. 740, on appeal (C.A. 9, Nov. 18, 1968).

The petitioners argue that DeVere had not ceased to do business and was not in liquidation, therefore the decision in *Morgan* is not applicable. It appears from the evidence that DeVere had ceased doing business. Its records show no rental receipts after September 1962. It filed a "final return" of excise tax with the State tax commission on February 14, 1963, for the quarter ended September 30, 1962. One of the original incorporators, Arnie Bergh, testified that he knew of no plan to carry on business by DeVere beyond the period of the fair,

which ended in October 1962. None of the petitioners testified at the hearing and no evidence was produced indicating an intention on the part of any of the stockholders to continue the corporation's activities. The corporation had disposed of its trailers and had no facilities or equipment for continuing the motel business. Its income tax return for the following year showed no business activity.

In the deficiency notices in these proceedings respondent, in addition to disallowing the ordinary losses claimed on the DeVere stock acquired in December 1962, made adjustments allowing such losses as capital losses. These adjustments had the effect of reducing each petitioner's net capital gains and reducing his taxable income. The petitioners, consistent with their contention that the section 1244 transaction was genuine, alleged in their petitions that respondent erred in these adjustments, among others. Respondent, in the answers to the petitions, taking the position that the losses were not deductible at all, admitted error in these adjustments and claimed increased deficiencies accordingly.

Petitioners contend that respondent's claims made in the answers for increased deficiencies should be rejected, first, as unsupported by allegations of fact, and, second, as not proved. Under Rule 32 of the Tax Court Rules of Practice, the burden of proof is upon the respondent as to this new issue pleaded in the answer.

With respect to the question of pleadings, respondent has admitted the facts alleged by each of the petitioners as to the amount of net long-term capital gains. The effect of this is to revoke the adjustments made in the deficiency notices favorable to the petitioners which reduced capital gains by treating the section 1244 losses as capital losses. The facts relied upon by respondent are those alleged by petitioners.

Respondent takes the position in the answers that the entire transaction in section 1244 stock was not a transaction entered into for profit, that it was a purported investment in an insolvent company yielding no hope of gain except taxwise, and that therefore no loss deduction, even as a capital loss, is available to petitioners in connection with the section 1244 stock, citing *Knetsch* v. *United States*, 364 U.S. 361 (1960). We agree with the foregoing analysis. The petitioners paid approximately 28 cents per share for their original stock when the prospect of a profit was inviting. After the venture had proved a failure and the loss was known, they purported to pay $2.50 per share for stock in an insolvent concern. Within 10 days they sold this stock to a straw buyer for one-tenth of a cent per share, solely to establish a loss. The purchase of "Section 1244 stock" was not a genuine purchase. The transaction was an attempt to convert an economic loss of the capital investment which had already been suffered into an ordinary loss deduction. We agree with respondent

that the petitioners sustained no losses upon the transactions in "Section 1244 stock" either as ordinary losses or capital losses.

The respondent's computation of the deficiencies, however, goes too far. Respondent agreed with the petitioners' allegations that each realized long-term capital gain of $6,419.84 from the repayment by DeVere of the loan to the corporation. Petitioners' allegations to this effect were premised upon their contention that the section 1244 transaction was real. Since we have agreed with respondent that it was not real, the conclusion necessarily follows that the loans purportedly repaid with the petitioners' own money were not in fact repaid and that no taxable gain resulted to petitioners from this maneuver. We so hold.

The petitioners sustained losses from their loans and, in the cases of Hill and Coats, from their guaranty of bank loans in addition to their shares of the DeVere net operating loss. It is agreed that each petitioner may deduct as an ordinary loss his proportionate share, $7,419.84, of the DeVere net operating loss. Pursuant to section 1376(b),[5] this is applied to reduce his basis in his original stock investment from $1,000 to zero. Hence, there was no loss upon this stock. The remaining $6,419.84 is applied to reduce the basis in his loan from $11,000 to $4,580.16. This amount is a nonbusiness bad debt, deductible under section 166(d), *supra*, as a short-term capital loss, and is available to each petitioner. Hill and Coats each paid $19,133.12 on account of his guaranty of the bank loan. A loss sustained by a guarantor unable to recover from his debtor is a loss from the worthlessness of a debt. *Putnam* v. *Commissioner*, 352 U.S. 82 (1956). This amount is available to each of them as a nonbusiness bad debt deduction under section 166(d). While these two petitioners paid additional amounts, the record does not establish that they sustained losses upon such amounts.

The deficiencies are to be recomputed in accordance with this opinion. Accordingly,

*Decisions will be entered under Rule 50.*

---

[5] SEC. 1376. ADJUSTMENT TO BASIS OF STOCK OF, AND INDEBTEDNESS OWING, SHAREHOLDERS.

(b) REDUCTION IN BASIS OF STOCK AND INDEBTEDNESS FOR SHAREHOLDER'S PORTION OF CORPORATION NET OPERATING LOSS.—

(1) REDUCTION IN BASIS OF STOCK.—The basis of a shareholder's stock in an electing small business corporation shall be reduced (but not below zero) by an amount equal to the amount of his portion of the corporation's net operating loss for any taxable year attributable to such stock (as determined under section 1374(c)).

(2) REDUCTION IN BASIS OF INDEBTEDNESS.—The basis of any indebtedness of an electing small business corporation to a shareholder of such corporation shall be reduced (but not below zero) by an amount equal to the amount of the shareholder's portion of the corporation's net operating loss for any taxable year (as determined under section 1374(c)), but only to the extent that such amount exceeds the adjusted basis of the stock of such corporation held by the shareholder.