Sofie Eger v. Commissioner.
Eger v. Commissioner
Docket No. 2866-64.
United States Tax Court
T.C. Memo 1969-171; 1969 Tax Ct. Memo LEXIS 124; 28 T.C.M. (CCH) 850; T.C.M. (RIA) 69171; August 19, 1969. Filed Benjamin Tannenbaum, 350 5th Ave., New York, N. Y., for the petition". John B. Murray, Jr., for the respondent. *125 TANNENWALD
Memorandum Findings of Additional Fact and Opinion TANNENWALD, Judge: This case is on remand from a decision of the United States Court of Appeals for the Second Circuit reported at 393 F. 2d 243. In light of that decision, we must decide the question not reached in our original opinion [1] whether certain payments should be attributed for Federal income tax purposes to stock or indebtedness of Hewlett, a corporation formerly owned by petitioner and her husband, Fred. The parties have submitted a supplemental stipulation, which is reflected in our additional findings of fact. Our original findings of fact are hereby incorporated to the extent not inconsistent with our additional findings of fact. At the outset, there are two specific modifications which should be made in our prior findings of fact. First, in footnote 9 851 to our previous opinion, we noted that there was a question whether petitioner's claimed loss was sustained in 1961. Upon the basis of the supplemental stipulation *126 of fact, we are now satisfied that it was, and we so find. Second, there is a question of the proper measurement of the claimed loss in terms of the actual dollars involved. In our prior findings of fact, we found that petitioner received $30,000 out of the proceeds of the sale of the stock. Upon further examination based upon the supplemental stipulation of fact, we find that the amount of $29,572.50 was actually available, and therefore received by, petitioner and Fred out of proceeds of the sale. In this connection, a word of explanation is necessary. The gross proceeds received from the sale, as our prior findings of fact show, was $132,402.99. We reject respondent's contention that this is the amount which should be compared with petitioner's basis of $40,000 for the stock and the indebtedness which existed in favor of petitioner and Fred in the sum of $62,037.96 at the time of the filing of the petition for a Chapter XI arrangement. The hard fact is that petitioner and Fred did not receive anything like that amount. Of this amount, $18,261.42 was withheld by the purchaser to pay liabilities of the corporation (Hewlett). Out of the remaining $114,141.57, petitioner and Fred *127 were obligated to pay off previously existing debts in accordance with the compromise arrangement, amounting to $40,100, and creditors of the corporation, as debtor in possession during the pendency of the Chapter XI proceedings, amounting to $35,469.07. In addition, pursuant to the plan of arrangement, $9,000 was paid as expenses of those proceedings, an obligation which Fred undertook to pay. The aggregate of the amounts which petitioner and Fred were obligated to pay is $84,569.07. Whether we consider the various credits and payments as reductions in the purchase price or as having been received by petitioner and Fred and then contributed by them to the capital of the corporation is immaterial for the purposes of this case. [2] The long and the short of it is that, out of the $132,402.99 gross purchase price, there were commitments with respect to the expenditure of $102,830.49, leaving a balance of $29,572.50 actually available to petitioner and Fred, in the form of $14,572.50 in cash and $15,000 in notes of Pick 'N Save. The notes and a check from Tannenbaum in the sum of $10,872.50 marked "Payment in full on sale of [the corporation's] stock" were delivered to petitioner and *128 Fred in 1961. [3] Among the claims listed in the petition under Chapter XI was the indebtedness to petitioner and Fred in the aggregate amount of $62,037.96. This same indebtedness was listed in the plan of arrangement submitted to the bankruptcy court on March 3, 1961. The latter listing was accompanied by a notation that payment of the pro rata portion of the 22 1/2 percent distribution to creditors generally, provided for in the plan, was "waived." The plan was confirmed by an order of the bankruptcy court on April 13, 1961, one of the terms of which specifically provided: 9. All creditors affected by the *129 terms of the plan of arrangement be and they hereby are forever restrained and enjoined from taking any further action or proceeding in connection with their said claims, except to enforce the consummation of the terms of the plan of arrangement as confirmed herein. On the next day, April 14, 1961, immediately prior to the closing of the sale of their stock to Pick 'N Save, petitioner and Fred, as the sole stockholders, and, together with Tannenbaum, as all the directors of the corporation, held a special joint meeting of stockholders and directors, at which the corporation reaffirmed the indebtedness of $62,037.96 to petitioner and Fred. No indebtedness to other creditors was reaffirmed. The minutes of that meeting also reflect that petitioner and Fred had sold all their shares to Pick 'N Save and that, as a condition of the sale, they would accept as payment in full for said reaffirmed indebtedness any sum remaining in Tannenbaum's hands after the creditors of the corporation had been paid. At that same meeting, petitioner, Fred, and Tannenbaum all resigned as officers and directors, and designees of Pick 'N Save were elected in their place and stead. The closing of the sale of *130 the stock to Pick 'N Save then took place. 852 Against the foregoing background, we must determine whether the $29,572.50 in notes and cash should be applied against the claimed $62,037.96 indebtedness. In that event, since the stock has been held by the Circuit Court of Appeals to be section 1244 stock, [4] there is no reduction in the cost basis of the stock and the deduction of an ordinary loss of $40,000 taken in the 1961 joint return and carried back to 1958, 1959, and 1960 was proper. The critical question is whether the indebtedness is entitled to be characterized as debt for Federal income tax purposes at the time petitioner and Fred received the payment in 1961. Petitioner recognizes that the indebtedness was discharged and thus became unenforceable as a result of the approval of the plan of arrangement. She contends, however, that it was resuscitated by the reaffirmation by the corporation on April 14, 1961, citing Zavelo v. Reeves, 227 U.S. 626 (1913), Jelliffe v. Thaw, 67 F. 2d 880 (C.A. 2, 1933), and New York General Obligations Law *131 (23A McKinney's Consol. Laws), sec. 5-701. [5] She therefore concludes that it represented a bona fide debt for tax purposes against which the $29,572.50 was received. We disagree. We see no need to dwell upon the New York law regarding the power of a debtor to revive an indebteedness discharged in bankruptcy. It is axiomatic that, for Federal income tax purposes, the existence of an indebtedness under local law is not determinative and that a debt must exist both in fact as well as in law, with the taxpayer bearing the burden of proof. See, e.g., C. M. Gooch Lumber Sales Co., 49 T.C. 649, 656 (1958); 5 Mertens, Law of Federal Income Taxation, sec. 30.03; 4A id., secs. 26.10-26.10c. Similarly, an obligation which was originally a bona fide debt for tax purposes may be found subsequently to have lost that characterization as a result of changed circumstance. Sayles Finishing Plants, Inc. v. United States, 399 F. 2d 214 (Ct. Cl. 1968); Cuyuna Realty Company v. United States, 382 F. 2d 298 (Ct. Cl. 1967); *132 A. R. Lantz Co. v. United States, 283 F. Supp. 164, 170 (C.D. Cal. 1968); Edwin C. Hollenbeck 50 T.C. 740 (1968), on appeal (C.A. 9, Nov. 18, 1968). The facts herein show that, prior to March 3, 1961, the corporation was indebted to petitioner and Fred in the sum of $62,037.96. On that date, however, petitioner and Fred voluntarily agreed to a plan of arrangement between the corporation and its creditors whereby any payment on account of the indebtedness was waived. Thereafter, on April 13, 1961, the plan was approved and they were from and after that moment barred from enforcing the indebtedness. We think, as a consequence of the foregoing, it can be said that they so dealt with the indebtedness as to cause it to lose its characterization and effectively to become a contribution to the capital of the corporation. Sayles Finishing Plants, Inc. v. United States, supra; Cuyuna Realty Company v. United States, supra; A. R. Lantz Co. v. United States, supra; Edwin C. Hollenbeck, supra; cf. Utilities & Industries Corporation, 41 T.C. 888, 911 (1964), modified on other grounds sub nom. The South Bay Corporation v. Commissioner 345 F. 2d 698 *133 (C.A. 2, 1965). The subsequent reaffirmation of the indebtedness, whatever its validity under local law, did not change this result. We recognize, of course, that a taxpayer has the legal right to minimize or avoid his taxes, but, "[while] this may be doctrine, it is not dogma and certainly it does not confer a license to substitute form for substance." See Irvine K. Furman 45 T.C. 360, 364 (1965), AFFIRMED PER CURIAM 381 F. 2d 22 (C.A. 5, 1967). The fact of the matter is that the reaffirmation was merely a temporary device utterly devoid of substance. Petitioner and Fred were in complete control of the situation and dealing only with themselves. They were not entitled to act unrealistically simply for the purpose of maximizing their tax benefits. Cf. Minnesota Tea Co. v. Helvering, 302 U.S. 609 (1938); Gregory v. Helvering, 293 U.S. 465 (1935); W. D. Haden Co. v. Commissioner, 165 F. 2d 588, 592 (C.A. 5, 1948). Adoption of the view urged by petitioner would turn fiction into fact and be a perversion of the purposes of section 1244. Cf. Raymond G. Hill, 51 T.C. 621 (1969); Edwin C. Hollenbeck, supra; *134 Wesley H. Morgan, 46 T.C. 878 (1966). Accordingly, we hold that the $29,572.50 was paid to petitioner and Fred on account 853 of their stock, which had a cost basis of $40,000, and that, therefore, petitioner is entitled to an ordinary loss of $10,427.50 in 1961 and to carry that loss back to 1958, 1959, and 1960. [6]
Decision will be entered under Rule 50. Footnotes
1. Our prior opinion, T.C. Memo. 1966-192, is unofficially reported at P-H 1966 T.C. Memo. Dec. par. 66,192 and 25 TCM 986↩.
2. Contributions to capital are considered as being allocable to stock which is not section 1244 stock. Section 1244(d)(1)(B). Respondent's regulations (section 1.1244(d)-2, Income Tax Regs.↩) provide for an allocation of the basis fo stock which is increased subsequent to issuance, but neither party has made any contention as to the applicability of these regulations herein. 3. The difference of $3,700 represented Tannenbaum's fee and would at best constitute a further contribution to the capital of the corporation. See footnote 2, supra.↩
4. All references, unless otherwise specified, are to the Internal Revenue Code of 1954, as amended.↩
5. During the taxable year 1961, the applicable provision, using identical language, was New York Personal Property Law (40, Part 1, McKinney's Consol. Laws), sec. 31.↩
6. As to the latent issue of allocation of basis, see footnote 2, supra.↩