BEN C. STOREY and MARY F. STOREY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Storey v. Commissioner
Docket No. 329-70.
United States Tax Court
T.C. Memo 1972-236; 1972 Tax Ct. Memo LEXIS 23; 31 T.C.M. (CCH) 1162; T.C.M. (RIA) 72236; November 27, 1972, Filed Ben C. Storey, pro se. Donald W. Williamson, Jr., for the respondent. WITHEY
MEMORANDUM FINDINGS OF FACT AND OPINION WITHEY, Judge: The Commissioner has determined a deficiency in the income tax of petitioners for the taxable year 1967 in the amount of $8,459.31. The issue *24 before the Court is whether a loss suffered by petitioners upon the becoming worthless of certain stock issued to them constitutes an ordinary loss under section 1244 of the Code [1] as contended by petitioners or a long-term capital loss as determined by respondent. FINDINGS OF FACT All stipulated facts are found as stipulated. The petitioners, Ben C. Storey and Mary F. Storey, were husband and wife during all times pertinent hereto and resided in Titusville, Florida, at the time of the filing of the petition herein. They filed a joint Federal income tax return for the calendar year 1967 with the district director of internal revenue, Jacksonville, Florida. Since Mary F. Storey is a party to this proceeding solely because a joint return was filed, Ben C. Storey will usually hereinafter be referred to as petitioner. On or about August 12, 1964, a corporation known as Superior Cabinets and Supply, Inc. (hereinafter referred to as Superior), was organized under the laws of the State of Florida with authorized capital of 1,000 shares of common stock at a par value of $10 per share. *25 It filed its United States corporate income tax returns for its fiscal years ended May 31, 1965, through May 31, 1967, respectively, with the district director of internal revenue, Jacksonville, Florida. On August 14, 1964, 100 shares of Superior's stock were issued for cash to the following persons who remained as its stockholders until its dissolution: Stock certificateno.
Stockholder
Number ofshares
1
(cancelled)
2
Mary F. Storey
1
3
Margaret Starrick
1
4
Ben C. Storey 98
Total shares
100
The officers of Superior throughout its existence were as follows: Ben C. Storey
President
Mary F. Storey
Secretary-treasurer
Margaret Starrick
Vice president These three individuals also comprised Superior's board of directors during its existence. Margaret Starrick was at all times pertinent hereto a resident of Titusville, Florida, and employed by Titusville Medical Clinic, Inc., a medical clinic comprised of petitioner and certain other medical doctors in Titusville, Florida. From its inception, Superior was undercapitalized and was financially unsuccessful thereafter. Commencing on June 9, 1964, prior to its incorporation *26 and continuing through May 15, 1967, petitioner made cash advances (by checks) to Superior in the total amount of $18,960.64. Superior issued to petitioner 11 promissory notes bearing dates ranging from May 31, 1965, through May 15, 1967, in the aggregate amount of $17,915.63. All of such notes were prepared and issued after the Internal Revenue Service began its audit in this case. All of the notes were unsecured, there were no fixed repayment dates as to the advances represented thereby, and no interest was ever accrued or paid to petitioner on such notes. Superior's minute book reflects that on June 30, 1965, its board of directors held a special meeting to adopt a stock plan that would qualify under section 1244 of the Internal Revenue Code of 1954. Minutes of that meeting read, in pertinent part, as follows: The secretary then distributed a plan for the sale of unsubscribed and unissued stock. The corporation year end financial statement was present. Upon motion duly made and carried, the said plan was ordered filed with the secretary and spread upon the minutes, said plan being as follows: For the protection of stockholders it is suggested that *27 a sale of unissued stock be made. The Corporation financial statement indicates, the amount of the offering together with all contributions to capital does not exceed $500,000, also, the amount to be paid for the offering together with all corporate equity capital does not exceed $1,000,000. The aggregate amount of the offering is of 900 shares of common stock for a maximum amount of $18,900.00. This offer is to expire not later than 2 years from the date of adoption of this plan. Superior was a small business corporation as defined in section 1244(c)(2) of the Internal Revenue Code of 1954. During the years in question, it derived more than half of its aggregate gross receipts from sources other than royalties, rent, dividends, interest, annuities, and sales or exchanges of stock or securities as required by section 1244(c)(1)(E) of the Code. On April 17, 1967, a revenue officer of the Internal Revenue Service sealed and tagged the doors of the corporation's business for nonpayment of Federal withholding taxes and public notice of the public sale of the corporation's assets, consisting of equipment and inventory, to take place May 16, 1967, was immediately *28 given. Superior's minute book reflects that on May 15, 1967, a special meeting of Superior's board of directors was held for the purpose, in essence, of accepting a proposal of petitioner to cancel the corporation's claimed debt to him in the amount of $18,685 in exchange for its issuance to him of 900 shares of the "section 1244 stock." Minutes of that meeting read, in pertinent part, as follows: WHEREAS, Ben C. Storey, has offered to cancel the corporation debt in the amount of $18,685.00 in return for the issuance to him of 900 shares of full paid and non-assessable shares of the capital stock of the said corporation, and WHEREAS, it appears that the offer is of fair value of the amount of the consideration demanded therefor, and that it is to the best interest of the corporation to accept such offer, NOW THEREFORE, IT IS RESOLVED that the said offer as set forth in the said proposition, be and the same hereby is approved, and it is recommended that the Board of Directors of the Corporation accept the said proposition and cause the issuance of stock of the corporation in payment of cancellation pursuant to said offer, and deliver to Ben C. Storey, 900 shares of capital stock *29 (common), and maintain records as to the holder of such stock for the purpose of identification. Also on May 15, 1967, Superior issued to petitioner its stock certificate No. 5 representing 900 shares of its common stock. There were no documentary stamps attached to the certificate or the stock book stub as evidence of payment of the State tax as required by section 201.05 of the Florida Statutes Annotated.
At the time of the issuance of the 900 shares of stock, and due to the insolvency of Superior brought about by bad management, bad accounts, competition, and lack of demand for cabinets in the area, petitioner had already decided to cause Superior to cease operations and to permit the public sale of Superior's assets with the hope that he could commence operations at a later date and recover some of his "funds that were invested." Superior actually ceased operations in April 1967 when it was closed down by the Internal Revenue Service for nonpayment of withholding taxes, was in fact dormant at the time of the alleged issuance of the 900 shares of stock on May 15, 1967, and never commenced operations at any time thereafter. It was the desire of petitioner and his accountant, *30 Max Bussard, that the corporate records reflect implementation of the so-called 1244 stock plan on May 15, 1967, since Superior's assets were scheduled for public sale on May 16, 1967. On May 16, 1967, a public sale was made by the Internal Revenue Service of Superior's assets, consisting of equipment and inventory. Superior's books reflect, as of May 31, 1967, a payment of withholding and social security taxes of $4,820 and credits to machinery and equipment of $4,050, and to petitioner of $770. The explanation of this entry is to record sale of equipment to the Internal Revenue Service. Prior to such book entry, Superior's books reflected a balance due petitioner of $17,915.63. After the entry, the balance due petitioner was shown to be $18,685.63. Superior was liquidated on May 31, 1967, and its land, building, and other remaining assets were transferred to petitioner on the same date subject to a first and second mortgage thereon and upon his assumption of certain other corporate indebtedness. On their 1967 individual return, the petitioners claimed a long-term capital loss of $980 on 98 shares of stock in Superior which were originally issued on August 14, 1964, and *31 an ordinary loss of $18,685 for "section 1244 stock" received by petitioner from Superior in exchange for the cancellation of its debt to him. The petitioners claimed on that return a net ordinary loss of $17,514, representing the difference between the loss of $18,685 claimed on the "section 1244 stock" and net longterm capital gains reported in the amount of $1,171. By notice of deficiency dated October 15, 1969, respondent determined a deficiency of $8,459.31 in the petitioners' income tax for 1967. The deficiency was based on the following determinations as set forth in the notice: (a) It was determined that a loss of $1,000 was alloable from the sale or exchange of capital assets in lieu of net taxable gain of $1,171 reported on the petitioners' income tax return. Accordingly, the petitioners' taxable income was decreased in the amount of $2,171. (b) It was determined that the loss on worthless stock of Superior Cabinets and Supply, Inc., totaled $17,972.29 in lieu of $18,685 reported on the petitioners' income tax return. It was determined that none of the loss qualifies as a loss from the sale or exchange of an asset which is not a capital asset for worthless section *32 1244 stock because the notes (indebtedness) exchanged for the stock were worthless at the time of the exchange. Therefore, the loss of $17,972.29 was subject to the limitations of section 1211 of the Code. Computation of the corrected loss was as follows: Cost of stock of Superior Cabinets and Supply, Inc., and advances to Superior Cabinets and Supply, Inc.
$18,952.29
Net capital gain on other assets reported on return 3,922.00
15,030.29
Capital loss carry-over from preceding years 600.00
Net capital loss
15,630.29
Capital loss allowed as limited by section 1211, Internal Revenue Code
1,000.00
Respondent computed the loss of $17,972.29 on the worthlessness of Superior's stock as follows: Total checks to Superior
18,960.64
Less:
Sales Tax Penalty carried on
Superior's books as a debit to
Ben C. Storey in its account
designated "Loans from Stock-
holders"
$ 8.35
Original investment in stock(11-13-64) 1,000.00 1,008.35 Net Loans (as computed by respondent)
17,952.29 The balance sheet annexed to Superior's last return filed for its fiscal year ended May 31, 1967, reflects no assets, *33 accounts payable of $6,659.02, capital stock of $19,685.63, and a surplus deficit of $26,344.65. ULTIMATE FINDINGS The advances made by petitioner to Superior from June 9, 1964, through May 15, 1967, did not create a debtor-creditor relationship between them--they constituted contributions to Superior's capital. The "notes" issued by Superior to petitioner and "exchanged" by him for 900 shares of Superior's stock were worthless when issued. OPINION Petitioner here seeks to recover as an ordinary loss deduction the amounts (totaling $18,960.64) advanced by him to Superior by applying the provisions of section 1244. Respondent has disallowed an ordinary loss deduction and contends that any loss suffered by petitioner is a capital loss and has so computed the deficiency herein. It is agreed that Superior was a small business corporation as defined in section 1244(c)(2). [2]Section 1244(a)[3] provides generally that individual losses from the sale or exchange of "section 1244 stock" are to be treated as ordinary losses. *34 Our ultimate findings dispose of the issue for it necessarily follows that any loss suffered by petitioner which is here in controversy was not "from the sale or exchange of 'section 1244 stock.'" The advances made by petitioner throughout the existence of Superior were not made with the intention that they be repaid or in pursuance of a plan to exchange them for stock of Superior. They were made at the risk of the business and represented equity capital. No debt was therefore owed by Superior to petitioner which formed the consideration for the belated issuance of its notes to him and, in turn, Superior's issuance of 900 shares of its stock in exchange therefor. Petitioner's loss was with respect only to his advances which in his testimony he characterized as "investments" and section 1244 does not afford a method whereby it may be converted to an ordinary loss. Edwin C. Hollenbeck, 50 T.C. 740 (1968), affd. 422 F. 2d 2 (C.A. 9, 1970); Raymond G. Hill, 51 T.C. 621 (1969). The note-stock transaction had no economic reality inasmuch as the notes were worthless when issued as were Superior's 900 shares of stock ostensibly issued to petitioner *35 in exchange therefor. The 900 shares being of no value when petitioner received them, it necessarily follows that he could suffer no economic loss with respect thereto as required by section 1244. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩
2. SEC. 1244(c)(2) Small Business Corporation Defined.--For purposes of this section, a corporation shall be treated as a small business corporation if at the time of the adoption of the plan-- (A) the sum of-- (i) the aggregate amount which may be offered under the plan, plus (ii) the aggregate amount of money and other property (taken into account in an amount, as of the time received by the corporation, equal to the adjusted basis to the corporation of such property for determining gain, reduced by any liabilities to which the property was subject or which was assumed by the corporation at such time) received by the corporation after June 30, 1958, for stock, as a contribution to capital and as paid-in surplus, does not exceed $500,000; and (B) the sum of-- (i) the aggregate amount which may be offered under the plan, plus (ii) the equity capital of the corporation (determined on the date of the adoption of the plan), does not exceed $1,000,000. For purposes of subparagraph (B), the equity capital of a corporation is the sum of its money and other property (in an amount equal to the adjusted basis of such property for determining gain), less the amount of its indebtedness (other than indebtedness to shareholders). ↩
3. SEC. 1244(a) General Rule.--In the case of an individual, a loss on section 1244↩ stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset: